# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MATTHEW GREENLEE, individually and on behalf of all persons similarly situated, | : : : |
| Plaintiff, | : CIVIL ACTION NO.: |
| v. | : : Collective Action |
| LAWYER.COM, INC. | : : |
| Defendant. | : : : |

## COLLECTIVE ACTION COMPLAINT

Matthew Greenlee ("Plaintiff") through his undersigned counsel, individually and on behalf of all persons similarly situated, files this Collective Action Complaint against Lawyer.com Inc. ("Defendant") seeking all available relief under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq*. ("FLSA").

### JURISDICTION AND VENUE

1. Jurisdiction over Plaintiff's FLSA claims is proper under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

2. Venue in this Court is proper pursuant to 28 U.S.C. § 1391.

3. The events giving rise to Plaintiff's claims occurred within this District.

4. Defendant is a citizen of New Jersey, conduct business in this District, and are thus subject to general personal jurisdiction in this Court.

### PARTIES

5. Plaintiff is an individual currently residing in Tucson, Arizona who previously worked for Defendant.

1

6. Pursuant to 29 U.S.C. § 216(b), Plaintiff has consented in writing to being a party plaintiff in this action.

7. Defendant is a Delaware corporation and operates nationwide.

8. Defendant's headquarters are located at 25 Mountainview Blvd., Basking Ridge, New Jersey, Somerset County, 07920.

9. Defendant's annual gross volume of business exceeds $500,000.00.

## CLASS DEFINITION

10. Plaintiff brings Count I of this lawsuit pursuant to the FLSA, 29 U.S.C. § 216(b) as a collective action on behalf of himself and the following class of potential opt-in litigants:

    All current or former call center representatives, sales representatives, and similar workers who performed work in the United States for Defendant within the past three years and who were classified as independent contractors (the proposed "FLSA Class").

11. Plaintiff reserves the right to redefine the proposed FLSA Class prior to notice or class certification, and thereafter, as necessary.

## FACTS

12. Defendant provides referral services for lawyers, by capturing leads and sending them to the law firms who have entered into marketing agreements with them.

13. Defendant also provides virtual receptionist services for attorneys and law firms.

14. Plaintiff's primary responsibility was to interact with individuals who placed phone calls to attorneys and law firms that were Defendant's customers (hereinafter, the "Customers").

15. Defendant hired Plaintiff and the proposed FLSA Class to be "*the voice for hundreds of lawyers across the nation.*"

> Hi, Matthew,
>
> The **LawyerLine Team** is thrilled to confirm your start date as:
>
> ## Monday, July 25th at 9:30am EST
>
> **What Does My Role Do?:** You will be working alongside the LawyerLine team to be the voice for hundreds of lawyers across the nation. Each representative has the opportunity to lighten a lawyer's work load tremendously by taking on their calls, maintaining relationships and reporting, all while taking home a pretty penny (based on the level of work put in, of course).

16. Defendant informed Plaintiff that he would be compensated as an independent contractor and not as an employee.

17. Plaintiff began working for Defendant on July 25, 2022 and continued working for Defendant through November 2024.

18. Upon preparing beginning his position as a call center representative, Plaintiff received an on-boarding email from Defendant which explained his role.

19. Plaintiff's position as a call center representative was remote, as he worked from home.

20. Upon hire, Defendant required Plaintiff to complete an Internal Revenue Service W-9 form.

21. Defendant's onboarding email stated, that as a call center representative, Plaintiff's function was to "*lighten a lawyer's work load tremendously by taking on their calls, maintaining relationships and reporting, all while taking home a pretty penny (based on the level of work put in, of course)*." (See image, supra).

22. Defendant conducted a mandatory five-day training program that began on July 25, 2022, which Plaintiff attended.

23. The itinerary for day one contained session topics which included, "*Time to meet your managers*," and "*meet your teammates*."

3

> Greetings, Matthew!
>
> Your official **LawyerLine** itinerary is here! Get excited for a fun day of *team-building activities, fun engagement,* and so much more, as our way of saying **WELCOME!**
>
> To access Monday's Official Training Session: **Click Here**
>
> Monday's official itinerary will go as follows:
>
> 9:30AM - 10:45AM We want to know more about you! 👋 👋
> 10:45AM - 11:00AM 15-minute break ☕
> 11:00AM - 12:00PM: Time to meet your managers - they're excited to meet you! 👋
> 12:00PM - 1:00PM: Lunchtime is here - hope you're hungry! 🍔 🍟 🥤
> 1:00PM - 1:15PM: Who will be guiding you? Meet Your Trainer! 📞 👍
> 1:15PM - 1:30PM: Get a tour of our backend, where all the magic happens 🪄
> 1:30PM - 2:30PM: Become "official." Download software and set up your email 💻
> 2:30PM - 3:00PM: Meet your teammates - read their words of encouragement below 👇
> 3:00PM - 3:30PM: Taking in so much information deserves a nice break! 😋
> 3:30PM - 5:00PM: Put your skills to the test with call exercises. 📞
> 5:00PM: You made it to the end of day one! Congratulations! 🎉

24. Defendant issued Plaintiff and each member of the proposed FLSA Class a "lawyer.com" email address.

25. Defendant required Plaintiff and the proposed FLSA Class to communicate with other team members using the Slack software platform.

26. Slack is cloud-based communication platform that uses Internet Relay Chat (IRC) protocol to create channels (or chat rooms) for internal company communication.

27. Plaintiff and the proposed FLSA Class were required to communicate with Defendant's Customers using a softphone communications platform.

28. Softphone is a software program for making and receiving telephone calls over the internet.

29. The softphone software provided by Defendant contained reports for Plaintiff to track the number of minutes that he worked which were counted towards his earnings.

30. Defendant provided Plaintiff and the proposed FLSA Class with instructions and training on how to manage calls from Defendant's Customers.

31. Defendant issued a 75-page training manual to Plaintiff.

32. Defendant's training manual outlined the requirements that Plaintiff and the proposed

FLSA Class was required to follow for completing call logs.

33. Defendant's training manual detailed the scripts that Plaintiff and the proposed FLSA Class were required to follow with the Customers.

34. Defendant's training manual provided instructions on how Plaintiff and the proposed FLSA Class were required to follow when communicating with their managers.

35. Defendant required Plaintiff and the proposed FLSA Class to place all internal communications through Slack.

36. Defendant's training manual referred to workers such as Plaintiff and the proposed class as "employees."



37. Defendant's training manual mandated that Plaintiff and the proposed FLSA Class were required to check their email regularly.

38. Defendant's training manual notified Plaintiff and the proposed FLSA Class that they were not permitted to delete any voicemail or email messages.

39. Defendant's training manual contained a section titled, "*Expectations and Protocol*."

40. Among the expectations that Defendant required was that of Plaintiff and the proposed FLSA Class use "*positive phrasing*," and "*show empathy and compassion appropriate to the caller's situation.*"

41. Under the "*Expectations and Protocol*," Defendant stated that Plaintiff and the proposed FLSA Class shall "*never give legal advice or our opinion to a caller there is no wiggle*

5

*room for this one and will lead to disciplinary action.*"

42. One of the topics in Defendant's training manual was, "*Etiquette and Phrasing*," which contained instructions on handling phone calls.

43. The "*Etiquette and Phrasing*" topic began with, "*We will now go over etiquette and phrasing to be used during call handling.*"

44. One instruction read, "*Before attempting a transfer you want to ask the caller if it is ok that you placed them on a brief hold while you attempt to reach the attorney.*"

45. Another instruction read, "*Try repeating the question back to the caller. This will often prompt them to start speaking again and can get you out of a tricky question.*"

46. Another instruction read, "*Keeping control of the call. At times there will be a caller that will attempt to control the call and will provide more information than needed for these scenarios.*"

47. The section on "Etiquette and Phrasing" also stated, "*Stay positive*," "*avoid negative responses*" and "*always respond with a positive response such as what you can do instead of what you can't.*"

48. The section on "*Etiquette and Phrasing*" provided Plaintiff and the proposed FLSA Class with canned responses to commonly asked questions, supplying dialogue in the event that a caller asked, "*are you an answering service*" and how to divert the call away from certain subjects.

49. On a monthly basis, Defendant distributed a company newsletter to Plaintiff and the proposed FLSA Class, which featured an "*Employee Spotlight*."

50. Upon information and belief, several members of the proposed FLSA Class, while classified as independent contractors, were featured in the "*Employee Spotlight*."

51. The October 2022 newsletter contained information on Defendant's "*Halloween Costume Contest*" and invited Plaintiff and the proposed FLSA Class to submit pictures of them in their Halloween costumes.

52. Defendant also offered supplementary, discretionary incentives to Plaintiff and the proposed FLSA Class.

53. One incentive offered by Defendant was an award for attitude/participation which was redeemable for gifts/equipment.

54. Another incentive offered by Defendant was cash bonuses (e.g., $50) for improving company processes.

55. Defendant required Plaintiff to work a shift that began at 8:30am and ended at 5:30pm, Monday through Friday.

56. During the shift, Defendant required Plaintiff to be available to respond to telephone calls, acting as a virtual receptionist for various law firms that were customers of Defendant.

57. Defendant paid Plaintiff at a per-minute rate for each telephone call he answered.

58. Defendant only paid Plaintiff and the proposed FLSA Class for the time that they on the phone, while functioning as a virtual receptionist for Defendant's clients.

59. Defendant did not compensate Plaintiff and the proposed FLSA Class for the time that they were engaged to wait for incoming calls; Defendant required Plaintiff and the proposed FLSA Class to immediately answer all incoming phone calls.

60. Plaintiff worked in excess of 40 hours per week.

61. Upon information and belief, the proposed FLSA Class worked in excess of 40 hours per week.

62. Defendant did not compensate Plaintiff and the proposed FLSA Class for all of the hours

that they worked per week.

63. Defendant did not compensate Plaintiff and the proposed FLSA Class for the time that they were engaged to wait.

64. Defendant did not pay Plaintiff and the proposed FLSA Class any overtime premium for the hours that they worked in excess of forty (40) in a week.

## EMPLOYMENT RELATIONSHIP

65. Courts within the Third Circuit weigh several non-exclusive factors in order to determine whether, as a matter of "economic reality," an employment relationship exists. In *Donovan v. DialAmerica Mktg., Inc.*, 757 F.2d 1376, 1382 (3d Cir. 1985), the Court of Appeals for the Third Circuit considered the following factors:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed;
> 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
> 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
> 4) whether the service rendered requires a special skill;
> 5) the degree of permanence of the working relationship;
> 6) whether the service rendered is an integral part of the alleged employer's business.

### *Defendant Exercised Control Over Plaintiff and the proposed FLSA Class*

66. Defendant set forth specific procedures that Plaintiff and the proposed FLSA Class were required to follow when responding to telephone calls.

67. Defendant utilized various performance metrics to track the productivity of Plaintiff and the proposed FLSA Class.

68. Defendant maintained control over the manner in which Plaintiff and the proposed FLSA Class communicated with Defendant's Customers.

69. Defendant graded Plaintiff and the proposed FLSA Class on metrics such as whether the

Customer's phone number was confirmed using the proper phrasing, and whether the Customer's name was phonetically verified.



70. Defendant ranked the calls that were handled by Plaintiff and the proposed FLSA Class on a 0 to 5 scale based on whether the "proper tone [was] displayed during this call."



71. Defendant ranked the calls that were handled by Plaintiff and the proposed FLSA Class on a 0 to 5 scale based on whether the "proper empathy [was] displayed during this call."



72. Defendant ranked the calls that were handled by Plaintiff and the proposed FLSA Class on

9

a 0 to 5 scale based on whether the "proper call control [was] displayed during this call."



### *Plaintiff and the proposed FLSA Class had Minimal Opportunity for Profit or Loss and Did Not Materially Invest in Defendant's Business*

73. Defendant set the terms of compensation for Plaintiff and the proposed FLSA Class.

74. Plaintiff and the proposed FLSA Class possessed no opportunity for profit or for loss.

75. Defendant provided the tools and software necessary for Plaintiff and the proposed FLSA Class to perform work on behalf of Defendant.

76. Plaintiff and the proposed FLSA Class were not required to invest in equipment or materials with respect to their employment with Defendant.

77. To perform their responsibilities, Plaintiff and the proposed FLSA Class merely used their existing home computers and software provided by Defendant.

78. Defendant provided Plaintiff and the proposed FLSA Class with a monthly stipend for internet access.

### *Work Performed by Plaintiff and the proposed FLSA Class Required No Special Skill*

79. No specific academic qualifications were required to be a customer service representative.

80. The work performed by Plaintiff and the proposed FLSA Class required no special skill.

81. Recruiting advertisements placed by Defendant required applicants to be "coachable,"

willing to accept and apply feedback.

82. Defendant required applicants to be "comfortable with internet tools, instant messaging, Outlook, and Microsoft Office."

### *Employment Was in the Nature of a Permanent Relationship*

83. The engagement that Plaintiff and the proposed FLSA Class had with Defendant was in the nature of a permanent relationship.

84. Plaintiff and the proposed FLSA Class regularly worked approximately in excess of 40 hours per week for Defendant.

### *The Services provided by Plaintiff and the proposed FLSA Class Were an Integral Part of Defendant's Business*

85. Defendant operates a legal marketing and client support company that caters to attorneys and law firms.

86. The work performed by Plaintiff and the proposed FLSA Class was in the nature of a legal secretary answering phones for a law firm.

87. The work performed by Plaintiff and the proposed FLSA Class was essential to Defendant's operations and directly supported the primary services that Defendant offer to its Customers.

88. The work performed by Plaintiff and the proposed FLSA Class was integral to Defendant's business.

89. As a matter of economic reality, Plaintiff and the proposed FLSA Class were dependent on Defendant for continued employment and income.

90. Given the number of hours that Plaintiff and the proposed FLSA Class worked for Defendant, the possibility and extent of outside employment was heavily curtailed.

## WILLFULNESS

91. Defendant does not maintain accurate records of the actual hours that Plaintiff and the proposed FLSA Class worked each day or the total hours worked each week, as required by the FLSA. *See* 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c) (requiring employers to maintain payroll records for three years and time sheets for two years, including the exact number of hours worked each day and each week).

92. The position held by Plaintiff and the proposed FLSA Class are not exempt from the FLSA's overtime requirements.

93. Defendant is a sophisticated media business with revenues exceeding $10,000,000.00 annually.

94. Defendant has access to knowledgeable human resource specialists and competent labor counsel.

95. Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions by failing to compensate Plaintiff and the proposed FLSA Class at the overtime rate of 150% of their regular rates of pay for the hours worked in excess of forty (40) per week, as required by 29 U.S.C. § 207.

## COLLECTIVE ACTION ALLEGATIONS

96. Plaintiff brings this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Class defined above.

97. Plaintiff desires to pursue his claims on behalf of himself and all individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

98. Plaintiff and the FLSA Class are "similarly situated," as that term is used in 29 U.S.C. § 216(b), because, *inter alia*, all such individuals were misclassified as independent

contractors.

99. Plaintiff and the proposed FLSA Class worked under Defendant's previously described common pay practices.

100. As a result of Defendant's pay practices, Plaintiff and the proposed FLSA Class were not paid an overtime premium for any hours worked in excess of forty (40) per week.

101. All FLSA Class members are similarly entitled to pursue claims for unpaid overtime wages at 150% of their applicable regular rate of pay.

102. Defendant paid Plaintiff and the FLSA Class on a biweekly basis monthly basis.

103. Defendant's failure to pay Plaintiff and the proposed FLSA Class failed an overtime premium for the hours that they worked in excess of forty (40) per week violates 29 U.S.C. § 207.

104. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendant's common compensation, timekeeping, and payroll practices.

105. The similarly situated employees are known to Defendant, are readily identifiable, and may be located through Defendant's business and human resource records.

106. The proposed FLSA Class Members employees may be readily notified of this action through direct U.S. mail and/or other appropriate means to opt into this litigation pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for overtime wage compensation, liquidated damages (or, alternatively, interest), and attorneys' fees and costs under the FLSA.

**COUNT I**
**Unpaid Overtime Wage Violation, 29 U.S.C. § 207**
**(On Behalf of the FLSA Class)**

107. All previous paragraphs are incorporated as though fully set forth herein.

108. The FLSA requires that covered employees be compensated at 150% of their regular hourly rate for all hours worked in excess of 40 each workweek. *See* 29 U.S.C. § 207.

109. Defendant is subject to the wage requirements of the FLSA because Defendant are each an "employer" under 29 U.S.C. § 203(d).

110. At all relevant times, Defendant was an "employer" engaged in interstate commerce and/or in the production of goods for commerce within the meaning of the FLSA. *See* 29 U.S.C. § 203.

111. At all relevant times, Defendant misclassified Plaintiff and the proposed FLSA Class as independent contractors.

112. At all relevant times, Plaintiff and the proposed FLSA Class were covered employees entitled to the FLSA's protections. *See* 29 U.S.C. § 203(e).

113. Plaintiff and the proposed FLSA Class are not exempt from the requirements of the FLSA.

114. Plaintiff and the proposed FLSA Class are entitled to be paid at 150% of their regular hourly rate for all hours worked in excess of forty (40) during each workweek.

115. Defendant's compensation scheme, applicable to Plaintiff and the FLSA Class, failed to comply with 29 U.S.C. § 207.

116. Defendant knowingly failed to compensate Plaintiff and the proposed FLSA Class overtime premium pay for each hour of overtime worked, in violation of 29 U.S.C. § 207.

117. Defendant failed to make, keep, and preserve records with respect to Plaintiff and the proposed FLSA Class in a manner sufficient to determine their wages, hours, and other conditions of employment in violation of the FLSA. 29 U.S.C. § 211(c); 29 C.F.R. §§ 516.5(a), 516.6(a)(1), 516.2(c).

118. In violating the FLSA, Defendant acted willfully and with reckless disregard of clearly applicable FLSA provisions.

119. Pursuant to 29 U.S.C. § 216(b), employers such as Defendant, who intentionally fail to pay an employee wages in conformance with the FLSA shall be liable to the employee for unpaid wages (including overtime wages and overtime gap time pay at the locally mandated rate), liquidated damages, court costs and attorneys' fees incurred in recovering the unpaid wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief individually and on behalf of all others similarly situated:

a. An order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. § 216(b);

b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential FLSA Class members;

c. Back pay damages (including unpaid wages and overtime wages) and prejudgment interest to the fullest extent permitted under the law;

d. Liquidated damages and penalties to the fullest extent permitted under the law;

e. Litigation costs, expenses, and attorneys' fees to the fullest extent permitted under the law; and,

f. Such other and further relief as this Court deems just and proper.

*Morgan Rooks, P.C.*
*By:/s/ Franklin J. Rooks, Jr.*
Franklin J. Rooks, Jr., Esquire
NJ Attorney ID: 023802010
525 Route 73 North, Suite 104
Marlton, NJ 08053
Telephone No. (856) 874-8999
Facsimile No. (856) 494-1707
Email: fjrooks@morganrooks.com

***Goodley McCarthy LLC***
<u>/s/ James E. Goodley</u>
James E. Goodley
NJ Attorney ID: 048572013
Email: james@gmlaborlaw.com
Ryan P. McCarthy
NJ Attorney ID: 219022016
Email: ryan@gmlaborlaw.com
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 394-0541

*Attorneys for Plaintiff and the Class*
